# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JHANDELL PERRY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No.:** |
| | : | |
| **JELD-WEN INC.,** | : | |
| | : | |
| **Defendant.** | : | **COMPLAINT IN CIVIL ACTION** |
| | : | |
| | : | |

Filed on Behalf of Plaintiff:
Jhandell Perry

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:     (412) 545-3015
Fax No.:         (412) 540-3399
E-mail:          jward@jpward.com

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JHANDELL PERRY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No.:** |
| | : | |
| **JELD-WEN INC.,** | : | |
| | : | |
| **Defendant.** | : | **COMPLAINT IN CIVIL ACTION** |
| | : | |
| | : | |

**COMPLAINT**

AND NOW, comes Plaintiff, Jhandell Perry, by and through the undersigned counsel, J.P. Ward & Associates, LLC. and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendant, Jeld-Wen Inc. of which the following is a statement:

**PARTIES**

1.     Plaintiff, Jhandell Perry (hereinafter "Ms. Perry"), is an adult individual who currently resides at 535 North 8th Street, Pottsville, Pennsylvania 17901.

2.     Defendant, Jeld-Wen Inc., (hereinafter "Jeld-Wen"), is a manufacturing company with a principal place of business located 1162 Keystone Boulevard, Pottsville, Pennsylvania 17901.

3.     At all times relevant hereto, Jeld-Wen was Ms. Perry's employer, and was also an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b), because it employed more than 15 individuals.

**JURISDICTION AND VENUE**

4.      Jurisdiction is proper as Ms. Perry brings this lawsuit under Title VII of the Civil Rights Act of 1964 ("Title VII") 42. U.S.C. §2000e *et seq*., the Pennsylvania Human Relations Act (hereinafter, "PHRA"), 43 Cons. Stat. § 951 *et seq.*, and the Family and Medical Leave Act of 1993 (hereinafter, the "FMLA"), 29 U.S.C. § 2601 *et seq*.

5.      Ms. Perry is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Schuylkill County, Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Middle District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

6.      Ms. Perry filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") regarding her allegations and received a Dismissal and Notice of Rights on August 26, 2021. This complaint is now timely filed within 90 days of said notice. A true and correct copy of the Dismissal and Notice of rights is attached hereto, made a part hereof, and marked as Exhibit "A".

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

7.      On or about 2019, Ms. Perry initiated employment with Jeld-Wen as a boxer.

8.      Ms. Perry's duties included working in the warehouse for shipping on the "manual build" door line.

9.      On or about 2020, Ms. Perry learned that she was pregnant with a proposed due date of January 17, 2021.

10.     Jeld-Wen utilized a point system for missed workdays, with employees receiving a point for every unexcused absence. Employees are terminated after six points.

11.     The point system allowed employees to obtain a doctor's note as proof of an excused absence, only applicable for the initial day of absence. Subsequent absences related to the doctor's note were not excused.

12.     During her approximate two-year employment with Jeld-Wen, Ms. Perry had allegedly accumulated 19 points due to absences stemming from a car accident, concerns regarding her son, and her pregnancy.

13.     On or about the end of June 2020, Department Manager, Michelle Reichenbach (hereinafter, "Ms. Reichenbach"), alerted Ms. Perry that she had exceeded her allotted points and required her to sign paperwork stating that she is unable to miss another day regardless of its emergent nature.

14.     Shortly thereafter Ms. Perry was suspended from Jeld-Wen. Additionally, upon information and belief, the document also stated that pursuant to Ms. Perry's suspension, some of her points would be scrubbed from her record.

15.     Additionally, Ms. Perry was alerted by the district manager of her suspension from Jeld-Wen until proper FMLA paperwork was completed for her pregnancy, as upon information and belief, Jeld-Wen viewed Ms. Perry's pregnancy as a liability.

16.     Following protocol, Ms. Perry signed and returned all applicable FMLA paperwork and or about mid-August 2020, Ms. Perry and returned to work.

17.     Upon her return, Ms. Perry attempted receive clarification from Human Resources concerning the dates of her FMLA-qualifying leave but did not receive a response.

18.     In failing to receive a response from Human Resources, Ms. Perry then asked Ms. Reichenbach, to which she was informed her leave only began when Ms. Perry was about to go into labor and having contractions.

19.    On or about the week of October 5, 2020, Ms. Perry was re-assigned to work with bi-fold doors pursuant to her pregnancy. Additionally, Ms. Reichenbach made Ms. Perry sign paperwork stating her pay rate would temporarily match that of a bi-fold employee.

20.    Ms. Perry was accommodated to build other doors prior to her suspension but had no issues working in bi-fold.

21.    Due to the heavy nature of the doors and Ms. Perry's pregnancy restricting her ability to lift objects exceeding 50 pounds, Ms. Perry's coworkers voluntarily provided her with assistance doing her job duties.

22.    Ms. Perry's coworkers verbally expressed concerns for Ms. Perry's health and pregnancy due to the weight of the doors, and therefore, did not allow her to lift the heavy objects alone.

23.    Upon learning that coworkers were actively assisting Ms. Perry, Ms. Reichenbach informed Ms. Perry, "If you are not able to do your job, you need to go to Human Resources you either need to take leave or do something else".

24.    Pursuant to Ms. Reichenbach's statement, Ms. Perry filed a formal complaint with Human Resources.

25.    Human Resources informed Ms. Perry that they did not condone Ms. Reichenbach's behavior and ensured Ms. Perry that her concerns would be addressed. Additionally, Ms. Perry signed a form from Human Resources stating that the complaint would be addressed with Ms. Reichenbach.

26.    Two days following Ms. Perry's complaint, Ms. Reichenbach forced Ms. Perry to transfer back to her old position in "manual layup" heavy doors, dismissing Ms. Perry's physical limitations due to her pregnancy.

27.     When Ms. Perry attempted to explain her inability to lift objects exceeding 50 pounds, Ms. Reichenbach replied, "You know how to build right? You were hired to build, so that's what you're going to do".

28.     Upon Ms. Perry's transfer back to her old "manual layup" line, other employees began to express their concern for Ms. Perry's health and wellbeing due to the nature of the work on the "manual build" line.

29.     Later that night, after switching with a line partner due to the weight of the doors, Ms. Perry excused herself to the restroom, as she was experiencing abdominal pain and "spotting" blood.

30.     Despite alerting Ms. Reichenbach of her health concerns, Ms. Perry was told to sit in the breakroom, as Ms. Reichenbach stated, "I can't send you home unless you call a doctor."

31.     Ms. Perry promptly called a doctor and was sent to the hospital due to her concerning symptoms.

32.     Although Ms. Perry provided a doctor's note documenting her visit to the hospital, Ms. Reichenbach, nevertheless, assigned Ms. Perry a point.

33.     The following day, Ms. Perry called off from work due to having to take her significant other to the hospital for a sprained wrist.

34.     On October 9, 2020, Ms. Perry was alerted by a coworker of her termination.

35.     Without receiving further notification from Jeld-Wen regarding her possible termination, Ms. Perry returned to Jeld-Wen for her scheduled shift the following Friday.

36.     The night before her return, Ms. Perry received notice that Jeld-Wen would be significantly docking her pay from $17.02/hr. to $15.35/hr. to match the hourly wage of her temporary position on the bi-fold line.

37.     Ms. Perry's rate was subject to change after her pregnancy, as she would then be able to return to her previous duties in "manual build" heavy doors.

38.     Upon her return, Ms. Reichenbach alerted Ms. Perry of her banishment from the premises.

39.     On October 14, 2020, Ms. Perry received an employment abandonment letter stating her termination, effective that day.

40.     The termination letter stated that Ms. Perry failed to report to work for multiple days, and that Ms. Perry was "beyond her point" of employment with Jeld-Wen.

41.     On or about October 19, 2020, Ms. Perry contacted Human Resources regarding her employment status, stating that she did not abandon her job and returned with a doctor's note.

42.     Ms. Perry was informed that she would receive a call back with more information regarding her employment status but was never contacted.

## <u>COUNT I</u>

### GENDER DISCRIMINATION ON THE BASIS OF PREGNANCY IN VIOLATION OF TITLE VII, THE PHRA, AND THE PREGNANCY DISCRIMINATION ACT

43.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length. Jeld-Wen constitutes an employer within the meaning of Title VII.

44.     Ms. Perry constitutes an employee within the meaning of Title VII.

45.     Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual… because of such individual's race, color, religion, sex, or national origin;" 42 U.S.C. §2000(e-1)(a)(1). Further, Title VII dictates that "[t]he terms 'because of sex;' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy,

childbirth, or related medical conditions shall be treated the same for all employment related purposes…" 42 U.S.C. §2000(e-1)(k)

46.     Further, the Pregnancy Discrimination Act ("PDA") prohibits—as a form of sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII")—adverse employment actions based on:

      a.   Current Pregnancy;

      b.   Past Pregnancy; and/or

      c.   Potential or intended pregnancy; and or medical conditions related to pregnancy, and/or childbirth.

47.     In order for Ms. Perry to establish a prima facie case of pregnancy discrimination, she must demonstrate that: (1) she was pregnant and the employer knew it; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) some nexus existed between her pregnancy and the adverse employment action. *Neidigh v. Select Specialty Hosp. McKeesport*, 664 Fed. Appx. 217, 221 (3d Cir. 2016) (citing *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008)).

48.     The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

49.     Ms. Perry was pregnant and informed her supervisor, Ms. Reichenbach.

50.     Ms. Perry was qualified for her position, as evidenced through her lack of performance write-ups.

51.     On or about mid-August 2020, Ms. Perry invoked her right to FMLA leave relating to her pregnancy.

52.     Ms. Perry was terminated from Jeld-Wen on October 4, 2020, prior to her known and impending maternity leave.

53.     Ms. Reichenbach's behavior towards Ms. Perry, including her placement in the "manual layup" line after notification of Ms. Perry's weight-lifting limits due to her pregnancy, as well as her comment that Ms. Perry was "beyond her point" of employment with Jeld-Wed, creates an inference that Ms. Perry was terminated under pretext and actually due to her pregnancy.

54.     Ms. Perry believes, and therefore avers, that she was unlawfully terminated due to gender discrimination in violation of Title VII, PHRA, and the PDA.

55.     As a direct and proximate result of Jeld-Wed's unlawful acts, Ms. Perry suffered damages including back pay, front pay, and emotional distress.

WHEREFORE, Plaintiff, Ms. Perry, hereby requests that this Court enter judgment in her favor, and against the Defendant, Jeld-Wen, and award all damages available at law and in equity, including: back pay, front pay, compensatory damages, punitive damages, reasonable attorney fees and costs, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper.

## COUNT II
### RETALIATION IN VIOLATION OF TITLE VII AND THE PHRA

56.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

57.     To establish a prima facie case of retaliation under Title VII, a plaintiff must provide evidence that: (1) she "engaged in activity protected by Title VII"; (2) the employer took an "adverse employment action" against her; and (3) there was a "causal connection" between her "participation in the protected activity and the adverse employment action." *Kengerski v.*

*Allegheny Cty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020) (citing to *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006); See also, *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).

58.     The analytical framework used to evaluate a claim under the PHRA is effectively indistinguishable from that under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

59.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA,* 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.,* 390 F.3d 760, 764 (3d Cir. 2004)).

60.     "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…" *Lichtenstein v. University of Pittsburgh Medical Center* 691 F.3d 294, at 307 (3d Cir.2012), citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3rd Cir.2007).

61.     Ms. Perry constitutes an employee within the meaning of Title VII.

62.     On or about 2020, Ms. Perry informed Ms. Reichenbach about her pregnancy, a Title VII protected condition.

63.     On or about the end of June 2020, Ms. Reichenbach alerted Ms. Perry that she had allegedly exceeded her allotted points in regard to unexcused absences from work, requiring her to sign paperwork stating that she is unable to miss another day regardless of its emergent nature.

64.     Shortly thereafter Ms. Perry was suspended from Jeld-Wen. Additionally, upon information and belief, the document also stated that pursuant to Ms. Perry's suspension, some of her points would be scrubbed from her record.

65. Furthermore, Ms. Perry was alerted by the district manager of her suspension from Jeld-Wen until proper FMLA paperwork was completed for her pregnancy, as upon information and belief, Jeld-Wen saw Ms. Perry's pregnancy as a liability.

66. Ms. Perry signed and filed all applicable FMLA paperwork and returned to Jeld-Wen in mid-August 2020.

67. Upon her return, Ms. Perry attempted receive clarification from Human Resources regarding the dates of her FMLA-qualifying leave but did not receive a response.

68. In failing to receive a response from Human Resources, Ms. Perry asked Ms. Reichenbach, to which she was informed it only began when Ms. Perry was about to go into labor.

69. On or about the week of October 5, 2020, pursuant to Ms. Reichenbach's notification of Ms. Perry's pregnancy and her related weightlifting limitations, Ms. Reichenbach placed Ms. Perry on the bi-fold production line due to the doors' lighter weight in comparison to her previous position on the manual build line.

70. Upon her transfer to the bi-fold production line, Ms. Perry's coworkers began to voluntarily assist her with her work due to her pregnancy and related weight limitations, as they were concerned for her health.

71. Soon thereafter, Ms. Reichenbach was notified of Ms. Perry's coworkers voluntarily assisting with her job duties, to which she informed Ms. Perry, "If you are not able to do your job, you need to go to Human Resources and you either need to take leave or do something else."

72. Ms. Perry, upset by the encounter, filed a formal complaint with Human Resources regarding Ms. Reichenbach's statement, a protected activity under Title VII.

73.   Human Resources shared their disagreement with Ms. Reichenbach's statement and ensured Ms. Perry that Ms. Reichenbach would be properly disciplined.

74.   Two days following Ms. Perry's formal complaint, Ms. Reichenbach reassigned Ms. Perry to her old position in "manual layup" to which she would be required to work with heavier doors.

75.   The proximity of Ms. Perry's formal complaint and Ms. Reichenbach's demand for Ms. Perry to return to her previous position while aware of Ms. Perry's physical limitations establishes a causal connection between the two events, therefore illuminating the retaliatory environment Ms. Perry was forced to endure.

76.   Ms. Perry attempted to continue her employment with Jeld-Wed until her FMLA-qualifying maternity leave, which is a protected activity under Title VII.

77.   On October 9, 2020, Ms. Perry was alerted by a coworker of her termination.

78.   Without receiving further notification from Jeld-Wen regarding her possible termination, Ms. Perry returned to Jeld-Wen for her scheduled shift the following Friday.

79.   The night before her return, Ms. Perry received notice that Jeld-Wen would be significantly docking her pay from $17.02/hr. to $15.35/hr. to match the hourly wage of her temporary position on the bi-fold line.

80.   Upon her return the next day, Ms. Reichenbach alerted Ms. Perry of her banishment from the premises.

81.   On October 14, 2020, Ms. Perry received an employment abandonment letter stating her termination, effective that day, stating Ms. Perry failed to report to work for multiple days, and that Ms. Perry was "beyond her point" of employment with Jeld-Wen.

82.     On or about October 19, 2020, Ms. Perry contacted Human Resources regarding her employment status, stating that she did not abandon her job and returned with a doctor's note.

83.     Ms. Perry was informed that she would receive a call back with more information regarding her employment status but was never contacted.

84.     The proximity of the protected activity of filing a complaint against Ms. Reichenbach and the adverse employment action of Ms. Perry's dock in pay and immediate termination establishes a causal connection between the two events.

85.     Ms. Perry believes, and therefore avers, that she was unlawfully terminated in retaliation due to her attempt to engage in protected activity of reporting Ms. Reichenbach's continuous harassment and retaliation in violation of Title VII.

86.     As a direct and proximate result of Jeld-Wed's unlawful acts, Ms. Perry suffered damages including back pay, front pay, and emotional distress.

WHEREFORE, Plaintiff, Ms. Perry, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Ms. Perry requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable attorney's fees and costs.

## COUNT III
### FMLA RETALIATION

87.     Ms. Perry incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

88.     The Family Medical Leave Act of 1993 permits eligible employees to take up to twelve (12) work weeks for a serious health condition that makes the employee unable to perform the functions of his position. 29 U.S.C.A §2611(2), 29 U.S.C.A §2612(a)(1)(d).

89.     Jeld-Wen is classified as an "employer" subject to the requirements of the FMLA. "Employer" includes any "public agency" as defined in section 3(x) of the Fair Labor Standards Act of 1938, (29 U.S.C. § 203(x)) which includes "any agency of… a State."; 29 U.S.C. § 2611(4)(A)).

90.     In order to prevail on a claim of retaliation under the FMLA, one must prove that: "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).

91.     Ms. Perry invoked her right to FMLA leave upon filing all applicable FMLA paperwork with Jeld-Wen.

92.     Ms. Perry is an eligible employee under 29 U.S.C.A §2611(2) who invoked her right to FMLA-qualifying leave for a serious health condition which affected her ability to perform the functions of her position.

93.     Additionally, on or about early mid-August of 2020, Ms. Perry's request for FMLA leave relating to her pregnancy was granted by Jeld-Wen.

94.     Upon Ms. Perry's inquiry as to the length of her FMLA leave, she was notified by Ms. Reichenbach that her leave only began when she was about to go into labor and having contractions.

95.     On or about October 14, 2020, Ms. Perry suffered an adverse employment decision in the form of the termination of Ms. Perry's employment under the guise of "job abandonment" following the invocation of her rights.

96.     Plaintiffs need only to show evidence that creates an inference that a causative link exists between the FMLA leave and termination. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-81 (3d Cir. 2000); see also, 29 U.S.C.A. § 2615(a)(2).

97.     "When the temporal proximity between the protected activity and adverse action is unduly suggestive, this is sufficient standing alone to create an inference of causality…" *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, at 307 (3d Cir. 2012) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 232 (3d Cir. 2007)).

98.     Due to the temporal proximity of the actions taken by her superiors and Human Resources, there is more than an inference, and in fact a direct causal relationship between the termination of Ms. Perry's employment and the invocation of her FMLA rights.

99.     As a direct and proximate result of Jeld-Wed's unlawful acts, Ms. Perry suffered damages including back pay, front pay, and emotional distress.

WHEREFORE, Plaintiff, Ms. Perry, respectfully requests this Honorable Court enter judgment in her favor and against Defendant, Jeld-Wen, and enter any and all wages due to Ms. Perry, compensatory damages, as well as reasonable costs and attorney's fees and liquidated damages pursuant to the Family and Medical Leave Act of 1993 29 U.S.C. § 2601 *et seq.*

## COUNT IV
## FMLA INTERFERENCE

100.     Ms. Perry incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

101.     The FMLA provides in pertinent part, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights, violation of which is known as FMLA retaliation. *Lichtenstein v. U. of Pittsburgh Med. Ctr*., 691 F.3d 294, at 307 (3d Cir. 2012) (citing to 29 U.S.C. § 2615(a)(1)).

102.    In order to demonstrate a claim for FMLA interference, a Plaintiff must establish: "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citing to *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F.Supp.2d 405, 446 (W.D. Pa. 2008); see also, *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006)).

103.    Moreover, an employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3rd Cir. 2012).

104.    Under this regulatory interpretation, employers are barred from considering an employee's FMLA leave "as a negative factor in employment actions such as hiring, promotions, or disciplinary actions." *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

105.    Ms. Perry was employed for a qualified employer under the FMLA and was therefore entitled to leave pursuant to the FMLA.

106.    Ms. Perry acknowledged and exercised her FMLA rights on or about mid-August of 2020, when she provided Jeld-Wen with the appropriate FMLA paperwork pursuant to her pregnancy.

107.    Shortly thereafter, upon her return to work, Ms. Perry attempted receive clarification from Human Resources concerning the dates of her FMLA-qualifying leave but did not receive a response.

108.    Although not a formalistic standard to invoke rights under the FMLA, employees must give their employer "adequate notice", and in doing so the employee "need not expressly

assert rights under the FMLA, or even mention the FMLA." *Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, at 303 (3d Cir. 2012) (interpreting the language of 29 U.S.C. § 2612(e)(2) and 29 C.F.R. § 825.303(b)).

109.    In failing to receive a response from Human Resources, Ms. Perry then asked Ms. Reichenbach, to which she was informed her leave only began when Ms. Perry was about to go into labor and having contractions.

110.    On or about October 14, 2020, Ms. Perry was informed of her termination of employment.

111.    Ms. Perry's termination was the ultimate result of the invocation of her FMLA rights on or about mid-August of 2020.

112.    Between the invocation of FMLA rights and the adverse employment decision, Ms. Perry's employer actively interfered with her right to take and remain on FMLA leave in direct violation of 29 U.S.C. § 2615(a)(1).

113.    Jeld-Wen violated Ms. Perry's rights by interfering with and/or restraining the exercise of Ms. Perry's FMLA leave in direct violation of 29 U.S.C. § 2615(a)(1).

114.    As a direct and proximate result of Jeld-Wed's unlawful acts, Ms. Perry suffered damages including back pay, front pay, and emotional distress.

WHEREFORE, Plaintiff, Ms. Perry, respectfully requests this Honorable Court enter judgment in her favor and against Defendant, Jeld-Wen, and enter any and all wages due to Ms. Perry, compensatory damages, as well as reasonable costs and attorney's fees and liquidated damages pursuant to the Family and Medical Leave Act of 1993 29 U.S.C. § 2601 et seq.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC.**

Date: October 28, 2021                By: _____
                                      Joshua P. Ward (Pa. I.D. No. 320347)
                                      Kyle H. Steenland (Pa. I.D. No. 327786)

                                      J.P. Ward & Associates, LLC.
                                      The Rubicon Building
                                      201 South Highland Avenue
                                      Suite 201
                                      Pittsburgh, PA 15206

                                      Counsel for Plaintiff